## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JUAN BARNES                          *

    Plaintiff                          *

        v                          *          Civil Action No. DKC-15-3579

KRISTA BILAK and                     *
WEXFORD HEALTH INC.
                      *

    Defendants
                         ***

## MEMORANDUM OPINION

Defendants in the above-entitled civil rights matter filed a Motion to Dismiss or for Summary Judgment.  ECF No. 20.  Plaintiff filed a response in opposition (ECF No. 24) and Defendants filed a reply (ECF No. 26).  Plaintiff then filed four papers in response to Defendants' reply.  ECF Nos. 27, 28, 30 and 32.  Defendants moved to strike each of Plaintiff's surreplies.  ECF No. 29, 31 and 33.  No hearing is necessary to resolve the matters pending before the court.  *See* Local Rule 105.6 (D. Md. 2016).  For the reasons stated below, Defendants' motions shall be denied without prejudice.

### Background

#### Plaintiff's Claims

In his complaint (ECF No. 1) as supplemented (ECF Nos. 2, 6 and 7), Plaintiff Juan Barnes alleges that he has been denied both pain medication for a chronic pain condition in his hip and leg and treatment for a broken finger.[1]  Barnes states that on October 7, 2015, he requested an increase of his pain medication, Tramadol (100 mg), but received no response. Barnes then filed two additional sick call slips on October 12 and 14, 2015, but again received no

---

[1]   Barnes appears to abandon the claim regarding the failure to address the injury to his finger in his later filed papers.

response.  He states that by October 22, 2015, the pain was so unbearable he asked his mother to call on his behalf, but her attempt to speak with medical staff was denied.  Barnes claims that he signed a release in 2014 permitting medical staff to discuss his care with his mother.  ECF No. 1 at pp. 1 – 2.

Barnes continued to request treatment for his pain with the assistance of correctional officers, one of whom spoke with Krista Clark[2] directly.  Barnes states that, although Clark assured Officer Self that she would look into why Barnes had not been seen, nothing occurred.  Barnes states that on October 26, 2015, he wrote a formal inmate complaint regarding his sick call and asked Officer Ipcuss to call Clark about his pain.  Barnes states that Clark said she would see him that day, but he was not seen and he did not receive a response from another sick call slip submitted on November 1, 2015.  ECF No. 1 at p. 2.

Barnes states that on November 4, 2015, he broke his finger and informed Officer D. Ellifritz about his injury.  Ellifritz called the medical department on Barnes' behalf and reported back to Barnes that their advice was to put a warm compress on his finger and put in a sick call slip.  Barnes states that his finger, which he injured in a fall, was swollen and he could not move it.  He claims that Ellifritz told the medical staff with whom he spoke that it was "illegal" not to examine Barnes, but they did not change their response and did not view the complaint as one requiring emergent care.  Barnes states that he put in a sick call slip for his finger and received no response.  ECF No. 1 at pp. 2 – 3.

Barnes states that on November 5, 2015, Krista Bilak took away all of his medication prescribed for pain (Tramadol) and for psychiatric symptoms of auditory and visual hallucinations (Risperidol).  Barnes states that on November 4, 2015, he also received an

---

[2]   It is unclear if "Krista Clark" is a different member of medical staff, or if Barnes mistakenly wrote "Clark" instead of "Bilak."

adjustment ticket for passing a magazine to another inmate, which he admits doing. When the other inmate was found with the magazine, it was discovered that two medications, Tegretol and Neurontin, were hidden inside of it. Barnes states that he does not take those medications, but his prescriptions were revoked regardless. He claims that no effort was made to determine whether the medication found in the magazine was something he had access to before his prescriptions were summarily revoked and he attributes these actions to the fact that he is African American. Barnes claims that there is also video evidence that proves he took his medication in the pill line that day, making it impossible for him to give it to someone else. He alleges that the other inmate, Jeremy Cochran, who was caught with the magazine did not have his prescriptions revoked because he is White. ECF No. 1 at pp. 3 – 4.

Barnes claims, in the first supplemental complaint, that medical staff were still refusing to see him as of November 18, 2015, even though they had been in the disciplinary segregation unit, where he was housed, seeing other inmates all week. Barnes further states that the Adjustment Hearing Officer found him not guilty on the charge regarding the medication because the pills in question were never confiscated and taken to a nurse for identification. Barnes states that, notwithstanding that fact, Bilak took his medication, including Risperidol and Prozac which he had been prescribed for treatment of his mental health issues. He states that the termination of this medication adversely affected his mental state. Barnes further alleges that his broken finger remained untreated as of November 18, 2015. ECF No. 2 at p. 1.

In another supplemental filing Barnes states that he still had not been seen by Krista Bilak as of November 24, 2015. He states that several people have tried to tell Bilak that Barnes did not pass his medication to anyone and claims Bilak could simply verify that fact by watching the tier video footage from November 4, 2015, showing that he took his medication in the pill

line.  He maintains that Bilak's sole motive for removing his health care plan and medication is the fact that he is African American and states that correctional officers will verify that Barnes did not engage in any wrong-doing.  ECF No. 5 at pp. 1 – 2.

Barnes claims that he is the only inmate who is denied access to his medical record despite his numerous requests.  He states that the chronic pain, which stems from a healed fracture in his leg, was only effectively treated with Tramadol.  Barnes states that prior to receiving Tramadol, he was prescribed Naproxen, Baclofen, Elavil, Mobic, Roboxen, Neurontin, Tegratol, Tylenol, Aspirin, and Motrin, but none of it relieved his pain.  He claims that when he asked for his Tramadol dose to be increased, Bilak used the "fact I was caught with someone else's pills" to revoke the prescription.  ECF No. 5 at p. 4.  He asserts that he could have beaten the charges against him, but he took responsibility for passing the magazine and maintains it had nothing to do with his medications.  *Id*.

Barnes claims in another supplemental paper that on November 22, 2015, he saw Bilak walking on the tier with an officer who was escorting her to cell 15.  He states that he banged on his door and yelled, "why are you doing this to me?"  Barnes claims that Bilak turned, looked at him, laughed, and waved as she continued to walk past his cell.  ECF No. 6 at p. 2.

Barnes states in another supplemental complaint that on December 2, 2015, he saw "a spokesperson" for Bilak and claims Bilak was still ignoring him.  He states this "Indian man" ordered medication for him, but prescribed a 50 mg dose of Tramadol instead of the 100 mg dose he had requested.  The prescription was written for four weeks.  ECF No. 7 at p. 1.

Barnes asserts that he should be receiving the treatment that has proven effective for managing his pain, which was 100 mg of Tramadol.  He further alleges that his complaint regarding his finger remained unaddressed in December of 2015.  ECF No. 7 at p. 2.

Barnes alleges that Bilak and "several other Wexford providers" are aware of the pain he suffers based on his hospital and jail medical records, yet they have taken no action in two years to determine the source of his pain. He states that when he broke his femur bone a metal rod was put into his leg and he later developed hip degeneration. The chronic pain he experiences dates back to 2008. ECF No. 11 at p. 1.

Barnes again alleges that the prescription for 100 mg of Tramadol was unjustly stopped after the November 4, 2015 incident despite the fact that his medication was not a part of that incident. He further claims that he is being denied "all care" and the resulting pain is "interfering with daily activities." ECF No. 11 at p. 2.

On January 19, 2016, Barnes filed a complaint with prison staff, asserting that he was seen by William Beeman but was not prescribed pain medication. His complaint received no substantive response because it was written on the wrong form. ECF No. 15 at p. 2, *see also* ECF No. 15-1. Barnes claims that this refusal to respond to his claim is retaliation for having filed the instant case. *Id*. at p. 1.

Barnes seeks to amend his complaint to name William Beeman as a defendant in the instant case. ECF No. 16. He claims that he was seen by Beeman on January 16, 2016, and was told by Beeman he was prescribing something for chronic pain, but Barnes did not receive it. ECF No. 16-1 at p. 1. He claims that he is denied access to his medical records and avers that medical staff are hiding something from him. Barnes asserts that "for a long time" he "released Wexford from their duties of having [him] see an orthopedic surgeon to diagnose [his]condition" in exchange for a prescription for Tramadol. *Id*.

<u>Defendants' Response</u>

In an unverified medical record prepared by Krista Bilak,[3] dated November 5, 2015, Barnes' prescriptions for Tramadol and Neurontin were discontinued after a shift report was received indicating that Barnes was hoarding medications with an intent to distribute.  ECF No. 20-2 at p. 2.  Barnes was placed on Administrative Segregation Pending Adjustment (ASPA) after it was discovered he had Buprenorphine[4] in his cell.  *Id.*  A prescription for Naproxen was provided in lieu of the Tramadol and Neurontin.  *Id.*

Subsequent sick call slips from Barnes complaining of pain note that he is being provided 500 mg of Naproxen or contain the notation "see EPHR."  *See* ECF No. 20-2 at pp. 7 – 12. There is no indication on these records that Barnes was seen in response to his complaints that his pain was intolerable.

On November 8, 2015, Barnes was seen by Robert Claycomb, RN, regarding his request to have his medication renewed.  Claycomb notes that Barnes denied hoarding medications with the intent to misuse them and indicated he needed something for pain.  Claycomb noted that Barnes was receiving Naproxen for pain.  ECF No. 20-2 at p. 16.  Medications listed on this record include Prozac and Risperdal with start dates of October 13, 2015, and stop dates of February 13, 2016.[5]  *Id.*

Barnes was again seen on November 27, 2015, by Ricki Moyer, RN.  In discussing the discontinuation of his medication, Moyer notes that Barnes "became argumentative" and stated

---

[3]     The dispositive motion filed by Defendants does not include a statement under oath from Bilak, nor are the medical records submitted as exhibits verified.  ECF No. 20.

[4]     Buprenorphine is used for treating moderate to severe pain.  Buprenorphine is a narcotic analgesic. It works by working in the brain and nervous system to decrease pain.  *See* https://www.drugs.com.

[5]     These medications are also noted with the same start and stop dates on the record for November 27, 2015. ECF No. 20-2 at p. 18.

that the November 4, 2015 incident did not have anything to do with his pain medication. Barnes then threatened to file a lawsuit and left the medical room.  ECF No. 20-2 at p. 18.

On December 2, 2015, Barnes was seen by Dr. Ashraf for a complaint of testicular pain, but during the visit Barnes stated he had no complaints regarding testicular pain; rather, he was experiencing pain in his hip due to having metallic plates in the thigh.  Barnes reported that he was on Neurontin and Tramadol before, but it had expired.  Ashraf advised that he could write a 90 day prescription for Neurontin and an eight week prescription for Tramadol, 50 mg.  He further explained that Tramadol is a narcotic drug and could not be provided for a longer period of time in order to avoid drug addiction.  It is noted that Barnes agreed with the plan of treatment. ECF No. 20-2 at p. 20.

On December 9, 2015, Barnes refused to come out of his cell for Nurse Sick Call in response to his request for Tramadol to be increased.  ECF No. 20-2 at p. 22.

On January 7, 2016, Barnes was seen again by Dr. Mahboob Ashraf for complaints of right hip pain with radiation and numbness.  Barnes described the pain as aching with numbness and that it was constant.  ECF No. 20-2 at p. 23.  Ashraf prescribed Gabapentin (Neurontin), 400 mg, for 90 days.  *Id*. at p. 14.

On January 16, 2016, Barnes was seen by William Beeman in response to his request for Tramadol.  ECF No. 20-2 at p. 27.  Barnes reported his pain as a "10 out of 10."  *Id*.  Beeman notes that Barnes "states that he is able to go up and down stairs, complete errands around the prison, complete cooking activities, able to dress himself can squat and kneel to perform ADL's[6] stand from a seated position, performs all ADL activities without difficulty."  *Id*.  Beeman noted that Barnes was already on medication for pain (Naproxen) and that "according to alerts" Tramadol and Neurontin are not to be ordered for Barnes.  *Id*.

---

[6]   "Activities of Daily Living"

**Standard of Review**

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the Plaintiff's complaint. *See Edwards v. Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The Supreme Court recently articulated the proper framework for analysis:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (*abrogated on other grounds*). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*; *Sanjuan v. American Board of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n.1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327(1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnotes omitted).

This standard does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* at 1968-69. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 1969. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265,

286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322-23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986).

A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn

therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

### Discussion

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate

consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments." *Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Barnes claims that his chronic pain condition has been acknowledged by medical staff since 2008.  Defendants do not appear to dispute the existence of Barnes' chronic pain condition, nor have they submitted admissible evidence supporting a finding that Barnes does not suffer from an objectively serious medical condition, *i.e.*, one that induces pain.  For purposes of the pending dispositive motion, the court will presume that Barnes' condition is objectively serious.

In his opposition response, which is verified, Barnes asserts that his prescription for Tramadol was removed for improper motives and that the unverified medical records submitted by Defendants do not establish that he was ever seen by medical staff for his complaints.  ECF No. 24.  Barnes further notes that Defendants do not dispute that his prescription was reinstated by Dr. Ashraf and maintains this was done as a result of his attorney's contact with Director Janice Gilmore.  *Id.* at pp. 1 – 2.  Barnes also submits a copy of the Notice of Infraction he received on November 4, 2015, which states as follows:

> On November 4, 2015, I, Officer D. Ellifritz was assigned to Housing Unit #2 C-Wing.  At approximately 6:25PM, while observing evening medication lines, Cell 2-C-9 opened and inmate Juan Barnes #409-797 exited the cell.  Inmate Barnes was carrying with him a magazine and attempted to pass the magazine to cell 2-C-31 which houses Inmate Willie Bryant #265-301 who is a segregation inmate.  I directed Inmate Barnes to the medication line and informed him that he could not pass anything to cell 2-C-31.  I then checked the magazine and found it to contain eight pills wrapped in tissue paper.  The pills were identified as six Tegretol and two Neurontin and taken to operations for disposition.  An MSP-67 (Chain of Custody) was completed and the pills were secured in the NBCI Evidence Dropbox.  Inmate Juan Barnes was positively identified by his DPSCS Identification Card.

ECF No. 24-5.  The Notice of Infraction differs greatly from Defendants' assertion that Barnes was hoarding opiate medication in his cell; the asserted basis for Bilak's discontinuation of the Tramadol prescription.  ECF No. 20-2 at p. 2.

In reply, Defendants assert that the details regarding the rule violation are immaterial given Barnes' admission to illegally possessing unauthorized medication.  ECF No. 26 at p. 2.

Defendants mischaracterize the nature of Barnes' "admission" in both the motion to dismiss and the reply. Barnes' only admission in the papers filed in this court is that he improperly passed a magazine from one inmate to another. He has not admitted to knowingly passing medication to another inmate in any of the papers filed.

Defendants further assert that Barnes' medication was reinstated by Dr. Ashraf on the assumption that the prescription had simply expired because that is what Barnes told him. When it was discovered that there was a "report from nursing staff" noting that Barnes was misusing Neurontin and Tramadol, the prescription was discontinued again by Dr. Ashraf. ECF No. 26-1 at p. 2. Defendants do not support this assertion with verified records or an affidavit from Dr. Ashraf or Krista Bilak.

In the absence of any verified records or sworn statements disputing Barnes' claims that his pain medication was discontinued for reasons unrelated to the November 4, 2015 incident, Defendants are not entitled to summary judgment in their favor. Moreover, the complaint allegations state a colorable claim for relief, making dismissal under Fed. R. Civ. Proc. 12(b)(6) inappropriate. Barnes' claims that Bilak was informed that the infraction did not involve his medication; that Bilak discontinued his prescription because of her bias against him and insured that discontinuation remained in place in retaliation for the instant lawsuit; and that Bilak knew or should have known that discontinuing Tramadol and Neurontin for Barnes would result in an increased amount of pain, have not been adequately addressed by Defendants.

Barnes' only claim against William Beeman is that he was seen by him on one occasion and was told he would be prescribed medication, but was not. ECF No. 16. The allegation as to Beeman does not state a colorable claim under 42 U.S.C. §1983. Leave to amend shall be denied as to the claim against Beeman. *See* Fed.R. Civ. P. 15(a)(2).

Defendants' motion to dismiss or for summary judgment shall be denied without prejudice.  The pending motions to strike shall also be denied and Defendants shall be directed to respond to Barnes' papers filed as surreplies in any renewed dispositive motion which shall be due within 28 days of the date of the Order which follows.

<pre>
   October 11, 2016                    _____/s/_____
Date                                   DEBORAH K. CHASANOW
                                       United States District Judge
</pre>